# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **STEVEN R. HUGHES, et al.,** | **CASE NO. 5:19-CV-00011** |
| **Plaintiffs,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **DEUTSCHE BANK NATIONAL TRUST COMPANY, et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants.** | |

This matter comes before the Court upon the motion to dismiss of Defendants Homeward Residential, Inc. ("Homeward"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Ocwen Loan Servicing, LLC ("Ocwen"), and Jason R. Berkeley (collectively, the "Ocwen Parties"), in which Defendant Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage Backed Pass-Through Securities ("DBNTC") has joined. (Doc. Nos. 7, 9.) Plaintiffs Steven R. Hughes and Ann K. Hughes (collectively, "Plaintiffs") filed a brief in opposition on March 29, 2019, to which the Ocwen Parties replied on April 12, 2019. (Doc. Nos. 11, 14.)

Also, currently pending is DBNTC's individual motion to dismiss for insufficient service of process, which DBNTC filed on February 6, 2019. (Doc. No. 8.) Plaintiffs have failed to file any response to DBNTC's motion to dismiss.

For the following reasons, DBNTC's motion to dismiss for insufficient service of process (Doc. No. 8) is GRANTED, and DBNTC's motion to dismiss based on its joinder in the Ocwen Parties' motion to dismiss is DENIED AS MOOT. The Ocwen Parties' motion to dismiss (Doc. No. 7) is GRANTED, except Plaintiffs' quiet-title claim (Count 9) is REMANDED to state court.

## I. Background

### a. Factual Background

On March 9, 2007, Mr. Hughes executed a note in favor of American Brokers Conduit in which he promised to pay the principal amount of a loan—$162,400—plus interest (the "Note"). (Doc. No. 1-1 at ¶ 19, Ex. A.) The same day, both Plaintiffs entered into a mortgage (the "Mortgage"), which granted MERS, as nominee for American Brokers Conduit, a security interest in the property located at 491 Wyoga Lake Boulevard, Stow, Ohio 44224 (the "Property"). (*Id.* at ¶ 20, Ex. B.) Several years later, MERS assigned its interest in the Mortgage to DBNTC via an assignment of mortgage, dated October 19, 2010. (*Id.* at ¶ 25, Ex. D.) On November 12, 2013, a corrective assignment of mortgage was executed, which corrected the name of the trust for which DBNTC was acting as trustee. (*Id.* at ¶ 28, Ex. E.)

On December 20, 2011, Mr. Hughes signed a loan modification agreement. (*Id.* at ¶ 24, Ex. C.) The modification agreement identified American Home Mortgage Servicing, Inc. ("American Home Mortgage") as the "Lender or Servicer" and referred to American Home Mortgage as the "Lender" throughout the agreement. (*Id.* at Ex. C.) American Home Mortgage subsequently changed its name to Homeward Residential, Inc. and was purchased by Ocwen. (*Id.* at ¶ 27.)

On June 13, 2014, based on Mr. Hughes alleged default in payment of the Note and Mortgage, DBNTC filed a foreclosure action against Plaintiffs in the Common Pleas Court of Summit County, Ohio. *Deutsche Bank Nat'l Trust Co. v. Hughes*, Summit Cnty. Ct. Com. Pl. No. CV 2014-06-2844.[1]

---

[1] The Court takes judicial notice of the court filings and judicial opinions from the state foreclosure action against Plaintiffs. *See Sullen v. Bray*, No. 1:17 CV 1499, 2017 WL 4777056, at *2 (N.D. Ohio Oct. 23, 2017) ("[T]he Court has reviewed the pending motions and attachments thereto, the record in this case, and the public record, including judicial opinions from the state foreclosure proceeding of which the Court takes judicial notice.")

DBNTC also named MERS as a defendant in the action. On September 23, 2014, DBNTC moved for the entry of a default judgment. Finding that Plaintiffs were in default of an answer or other pleading, the court entered a decree of foreclosure on October 2, 2014. (Doc. No. 14-1.)

Shortly thereafter, Plaintiffs moved to set aside the default judgment and to file an answer. On January 9, 2015, the court denied Plaintiffs' motion. After some delay, Plaintiffs then moved to vacate the decree of foreclosure, claiming it should be vacated due to DBNTC's failure to comply with federal law. On November 7, 2016, the court denied that motion as well. Plaintiffs appealed that order to the Court of Appeals of Ohio, Ninth Judicial District, which affirmed the lower court's ruling. *Deutsche Bank Nat'l Trust Co. v. Hughes*, No. 28454, 2018 WL 1413776 (Ohio Ct. App. 9th Dist. Mar. 21, 2018).

### b. Procedural History

On November 30, 2018, Plaintiffs initiated the current action by filing a complaint in the Common Pleas Court of Summit County, Ohio. (Doc. No. 1-1.) Plaintiffs named Elizabeth Boulton, Brenda Frazier, and Joel Pires as defendants, in addition to the Ocwen Parties and DBNTC (collectively, "Defendants"). The complaint contains ten counts relating to the Note and Mortgage and DBNTC's foreclosure action:

1. Count 1: Breach of Contract

2. Count 2: Bad Faith and Breach of Implied Covenant of Good Faith and Fair Dealing

3. Count 3: Promissory Estoppel

4. Count 4: Violation of Federal and State Protections and Laws (including the Fair Debt Collection Practices Act ("FDCPA"), Ohio Consumer Sales Practices Act ("CSPA"), Truth in Lending Act ("TILA"), Real Estate Settlement Procedures Act ("RESPA"), and National Housing Act ("NHA"))

5. Count 5: Fraud and Misrepresentation

6. Count 6: Civil Conspiracy

7. Count 7: Violation of the Ohio Corrupt Practices Act ("OCPA") and Racketeer Influenced Corrupt Organizations Act ("RICO")

8. Count 8: Fraudulent Inducement

9. Count 9: Quiet Title

10. Count 10: Slander of Title

Based on these claims, Plaintiffs seek a variety of remedies, including the reversal of the foreclosure judgment, a declaration that Plaintiffs are the rightful holder of title to the Property, and damages.

On January 2, 2019, the Ocwen Parties filed a notice of removal to this Court. (Doc. No. 1.) On February 6, 2019, the Ocwen Parties then filed a motion to dismiss, asserting that this Court lacks jurisdiction pursuant to the *Rooker–Feldman* doctrine, that Plaintiffs' claims are barred by *res judicata* and the applicable statutes of limitations, and that many of Plaintiffs' claims are inadequately alleged. (Doc. No. 7.) The same day, DBNTC joined the Ocwen Parties' motion to dismiss. (Doc. No. 9.) DBNTC also filed its own motion to dismiss based on Plaintiffs' alleged failure to properly serve DBNTC. (Doc. No. 8.) DBNTC asserts that Plaintiffs mailed service to Corporation Service Company ("CSC"), which has not been authorized to accept service on behalf of DBNTC. (*Id.* at 4-5.)

Plaintiffs filed a brief in opposition to the Ocwen Parties' motion to dismiss on March 29, 2019 in which they argue that the *Rooker–Feldman* doctrine and *res judicata* are inapplicable, that they have made sufficient allegations to state a claim for relief (or should be given leave to replead), and that their claims are timely because the applicable statutes of limitations were equitably tolled. (Doc. No. 11.) However, Plaintiffs have not filed any response to DBNTC's motion based on

improper service. The Ocwen Parties filed a reply in support of their motion to dismiss on April 12, 2019, and both motions are now ripe for review. (Doc. No. 14.)

## II. Standard of Review

### a. Rule 12(b)(1)

When subject matter jurisdiction is challenged in a motion to dismiss pursuant to Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Motions under Rule 12(b)(1) "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id.* Thus, the complaint's material allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id.* On the other hand, factual attacks challenge "the factual existence of subject matter jurisdiction." *Id.* "A motion to dismiss for lack of subject matter jurisdiction pursuant to *Rooker-Feldman* is a facial attack of a court's subject matter jurisdiction." *Pace v. Deutsche Bank Nat'l Tr. for First Franklin Mortg. Loan Tr. 2006-FF16, Asset-Backed Certificates, Series 2006-FF16*, No. 2:18-cv-195, 2018 WL 4334614, at *3 (S.D. Ohio Sept. 11, 2018).

### b. Rule 12(b)(5)

Pursuant to Rule 12(b)(5), "a trial court, upon motion, may dismiss a complaint for failure to make proper service of process." *Vitek v. AIG Life Brokerage*, No. 2:06-cv-0615, 2007 WL 682431, at *2 (S.D. Ohio Feb. 27, 2007). Indeed, "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012). "And in the absence of personal jurisdiction, a federal court is

'powerless to proceed to an adjudication.'" *Id.* (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). In addition, "[b]ecause the pleadings themselves will typically shed no light on service issues, motions to dismiss need not be treated as motions for summary judgment even if they are supported by affidavits or other evidence outside the pleadings." *Boulger v. Woods*, 306 F. Supp. 3d 985, 993 (S.D. Ohio 2018), *aff'd*, 917 F.3d 471 (6th Cir. 2019).

  **c. Rule 12(b)(6)**

  Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

  The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Further, in ruling on a motion to dismiss, a "court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Hall v. Mortg. Elec. Registration Sys., Inc.*, No. 1:16CV2075, 2017 WL 1462240, at *3 (N.D. Ohio Mar. 1, 2017), *report and recommendation adopted*, 2017 WL 1449705 (N.D. Ohio Apr. 21, 2017). Matters of which the court may take judicial notice includes judicial opinions from other cases. *See Sullen v. Bray*, No. 1:17 CV 1499, 2017 WL 4777056, at *2-3 (N.D. Ohio Oct. 23, 2017).

## III. Analysis

### a. DBNTC's Motion to Dismiss

Without proper service, this Court lacks jurisdiction to consider the merits of Plaintiffs' claims against DBNTC. *See Sullivan v. United States Forest Serv.*, No. 18-5558, 2019 U.S. App. LEXIS 233, at *7 (6th Cir. Jan. 3, 2019). Thus, the Court must first consider DBNTC's motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5). As a result of the alleged lack of service, DBNTC asserts the Court lacks personal jurisdiction over DBNTC and moves for dismissal under Rule 12(b)(2) as well. DBNTC's motion is unopposed, as Plaintiffs have failed to file any opposition despite ample time to do so.

Although DBNTC argues that Plaintiffs have failed to properly serve DBNTC under Federal Rule of Civil Procedure 4, "[i]t is well established that '[i]n determining the validity of service in [a] state court prior to removal, a federal court must apply the law of the state under which the service is made.'" *Ramsey v. Deurmier*, No. 1:13–cv–806, 2014 WL 617643, at *2 (S.D. Ohio Feb. 18, 2014) (quoting *Vitek*, 2007 WL 682431, at *2). Because Plaintiffs attempted service upon DBNTC prior to

the removal of this case from the Common Pleas Court of Summit County, Ohio, this Court must look to Ohio law to determine whether service of process was valid.

In Ohio, "[t]he obligation to perfect service of process is placed only on the plaintiff." *LaNeve v. Atlas Recycling, Inc.*, 119 Ohio St.3d 324, 329 (2008). "A presumption of proper service exists when the record reflects that the Civil Rules pertaining to service of process have been followed, unless rebutted by sufficient evidence." *Vitek*, 2007 WL 682431, at *2. However, "actual knowledge of a lawsuit's filing and lack of prejudice resulting from the use of a legally insufficient method of service do not excuse a plaintiff's failure to comply with the Civil Rules." *LaNeve*, 119 Ohio St.3d at 329. Ohio Rule of Civil Procedure 4.2(F) provides that service of process upon a corporation shall be made (1) "by serving the agent authorized by appointment or by law to receive service of process;" (2) "by serving the corporation at any of its usual places of business by a method authorized under Civ.R.4.1(A)(1);" or (3) "by serving an officer or a managing or general agent of the corporation." Similar service options apply to other forms of legal entities. *See* Ohio R. Civ. P. 4.2(G)-(I).

Service is insufficient when made upon an agent who has not been authorized to receive service on behalf of the defendant. For example, in *Madorsky v. Radiant Telecom, Inc.*, the court held that service of the complaint and summons on TCS Corporate Services was not proper when the plaintiff "presented no evidence to demonstrate that TCS Corporate Services was, in fact, [the defendant's] statutory agent authorized to receive service on its behalf." No. 87231, 2006 WL 3517968, at *2 (Ohio Ct. App. 8th Dist. Dec. 7, 2006); *see also Austin v. White Castle Sys., Inc.*, No. 12AP–1029, 2013 WL 6095880, at *3 (Ohio Ct. App. 10th Dist. Nov. 19, 2013) (holding service was improper when there was not sufficient "evidence that Warburton's legal office serve[d] as an agent

authorized by appointment or by law to receive service of process for White Castle pursuant to Civ.R. 4.2(F)").

DBNTC argues service was improper under the rules of service applying to corporations. Although DBNTC's exact legal status is not directly addressed, the Court finds that Plaintiffs have failed to properly serve DBNTC under any rule applying to legal entities in Ohio. DBNTC asserts that, prior to removal, the Clerk of Court mailed service to CSC in Columbus, Ohio, and that CSC is not authorized to receive service on behalf of DBNTC. In support of its argument, DBNTC attached to its motion a letter from CSC to Plaintiffs' counsel indicating that Plaintiffs' attempted service had been rejected. (Doc. No. 8-1.) Plaintiffs have failed to respond to DBNTC's motion or to offer any evidence that CSC was authorized to receive service on behalf of DBNTC. In addition, there is no indication that service was made at one of DBNTC's usual places of business or on any of DBNTC's officers, managing or general agents, managers, members, or partners. Accordingly, the Court concludes that Plaintiffs have not properly served DBNTC.

Although Plaintiffs failed to properly serve DBNTC, the Court must still determine whether dismissal is appropriate. Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In a removed case, the 90-day period runs from the filing of the notice of removal. *Johnson v. Skolski*, No. 06-13904, 2007 WL 141961, at *4 (E.D. Mich. Jan. 16, 2007). The notice of removal in this case was filed on January 2, 2019, and the prescribed 90-day period has long since passed. Thus, the Court must first "determine whether the plaintiff has shown good cause for the failure to

effect service." *Vitek*, 2007 WL 682431, at *5. If not, then "the court must either (1) dismiss the action or (2) direct that service be effected within a specified time." *Id.* "The burden of establishing good cause lies with the party opposing the motion to dismiss, and necessitates a demonstration of why service was not made within the time constraints." *United Prod. Solutions, Ltd. v. Tara Toy Corp.*, No. 5:10CV01718, 2011 WL 3566849, at *2 (N.D. Ohio Aug. 12, 2011).

Despite receiving multiple notices that their service on DBNTC was improper, including DBNTC's motion to dismiss for insufficient service of process, Plaintiffs have not identified any justification for why they have not served DBNTC within the time constraints of Rule 4(m). Nor have Plaintiffs made any other attempts to properly serve DBNTC. As such, Plaintiffs have failed to establish good cause for their failure to effect service. Plaintiffs have also not provided any reason that this Court should extend the period for service, rather than dismiss their claims. Accordingly, the Court finds that dismissal of Plaintiffs' claims against DBNTC for insufficient service of process is appropriate.

In addition, because Plaintiffs never properly served DBNTC, this Court lacks jurisdiction over the merits of Plaintiffs' claims against DBNTC. Therefore, DBNTC's motion to dismiss based on its joinder in the Ocwen Parties' motion to dismiss must be denied as moot.

**b. The Ocwen Parties' Motion to Dismiss**

**i. *Rooker–Feldman* Doctrine**

Pursuant to Rule 12(b)(1), the Ocwen Parties move this Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction based on the *Rooker–Feldman* doctrine. The Court finds that the *Rooker–Feldman* doctrine is not applicable, except with regard to Plaintiffs' quiet-title claim.

The *Rooker–Feldman* doctrine derives from two Supreme Court decisions. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The doctrine "stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995). Instead, "[a] party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *Id.*

Thus, courts must distinguish "between plaintiffs who bring an impermissible attack on a state court judgment, in which case *Rooker–Feldman* does apply—and plaintiffs who assert independent claims before the district court, in which case *Rooker–Feldman* does not apply." *Smith v. Encore Credit Corp.*, 623 F. Supp. 2d 910, 916 (N.D. Ohio 2008). The critical inquiry is "the source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction." *Id.* However, "[i]f there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.* Further, federal jurisdiction is proper over an independent claim even if the claim "denies a legal conclusion that a state court has reached." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)). In that case, state law would then determine whether the defendant prevails under principles of preclusion. *Id.*

Multiple courts have addressed the *Rooker–Feldman* doctrine in the context of state court foreclosure judgments, and many have found that a district court's review of allegations of wrongful conduct before and throughout foreclosure proceedings is not barred by the doctrine. *See, e.g.*, *Brown v. First Nationwide Mortg. Corp.*, 206 F. App'x 436, 440 (6th Cir. 2006) ("Brown's claim that the

mortgage foreclosure decree was procured by fraud is not barred by *Rooker–Feldman*."); *Pace*, 2018 WL 4334614, at *4 (holding *Rooker–Feldman* doctrine inapplicable to allegations of "fraudulent conduct before and throughout the foreclosure proceedings; violation of federal laws before and throughout the foreclosure proceedings; breach of the duty of good faith; and conversion"); *Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 958 (S.D. Ohio 2010) ("[H]is Amended Complaint also makes related, but clearly separate, claims based on alleged violations of federal and state law over which this Court does have jurisdiction unaffected by the earlier foreclosure judgment in state court proceedings.").

In this case, most of Plaintiffs' claims are based on a variety of alleged wrongful acts committed by the Ocwen Parties leading up to the foreclosure proceedings. For instance, Plaintiffs allege they were harmed by the Ocwen Parties' acts of fraud, breach of contract, and violations of numerous federal and state laws, such as the FDCPA, TILA, RESPA, RICO, and OCPA, relating to the Note, Mortgage, and eventual foreclosure action. Thus, the source of injury upon which Plaintiffs base these claims is the Ocwen Parties' conduct that gave rise to the state court proceedings—not the state court judgment itself. As such, Counts 1-8 and 10 are independent claims to which the *Rooker–Feldman* doctrine is inapplicable.

However, Plaintiffs' quiet-title claim—Count 9—solely seeks to "transfer the Property back to the Plaintiffs and to remove any and all clouds on the title to and interest in the Property." (Doc. No. 1-1 at ¶ 178.) Plaintiffs allege that that "[a]ny and all alleged sales, transfers or otherwise relative [sic] of the Property to certain Defendants were and remain fraudulently induced, improper, unenforceable, ineffectual, and/or unconscionable, in both law and equity." (*Id.* at ¶ 179.) Plaintiffs' allegations make it clear that they are attacking the validity of the transfer of the Property away from

them, which is a direct result of the state court foreclosure judgment. Thus, the source of Plaintiffs' injury with regard to Count 9 of their complaint is the state court decision, and granting the Plaintiffs' requested relief would require a reversal of that decision. Therefore, pursuant to the *Rooker–Feldman* doctrine, this Court has no jurisdiction over Count 9 of Plaintiffs' complaint. *E.g.*, *Dale v. Selene Finance LP*, No. 3:15CV1762, 2016 WL 1170772, at *4-5 (N.D. Ohio Mar. 25, 2016) ("There is no question, then, that Dale's quiet-title claim identifies the state-court foreclosure judgment as the source of his injury.").

Although the Court does not have jurisdiction over Count 9, the Court cannot dismiss the claim as the Ocwen Parties have requested. The removal statute provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). As other courts have recognized: "The *Rooker-Feldman* doctrine is jurisdictional in nature, and the words of § 1447(c) are unambiguous. Because the Court lacks jurisdiction over [Dale's quiet-title claim], it must remand [it]." *Dale*, 2016 WL 1170772, at *6 (quoting *Battah v. ResMAE Mortg. Corp.*, 746 F. Supp. 2d 869, 874 (E.D. Mich. 2010)). Accordingly, the Court remands Plaintiffs' quiet-title claim to the Common Pleas Court of Summit County, Ohio.

### ii. Res Judicata

The Ocwen Parties also assert that Plaintiffs' claims are barred by *res judicata*, specifically the doctrine of claim preclusion. The Court agrees, except with respect to Plaintiffs' claims against Mr. Berkeley and Plaintiffs' FDCPA and CSPA claims.

A federal court "must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (quoting *Hospital Underwriting Grp., Inc. v. Summit Health Ltd.*, 63 F.3d 486,

494 (6th Cir. 1995)). As such, "when asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action." *Id.* Because the foreclosure judgment against Plaintiffs was entered in Ohio, the Court looks to Ohio law to determine the preclusive effect of that judgment.

"In Ohio, the doctrine of *res judicata* encompasses the two related concepts of claim preclusion and issue preclusion." *Sullen*, 2017 WL 4777056, at *4. With regard to claim preclusion, the Ohio Supreme Court has held that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995). More specifically, "claim preclusion has four elements in Ohio: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood*, 127 F.3d at 493. In contrast, issue preclusion "precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *Sullen*, 2017 WL 4777056, at *4.

Before assessing whether the elements of claim preclusion have been satisfied, however, the Court must address Plaintiffs' argument that a *res judicata* defense may not be raised in a motion to dismiss. While that may be true under Ohio's civil procedure rules, "[t]here is no corresponding federal precedent for disallowing a *res judicata* defense in a Fed.R.Civ.P. 12(b)(6) motion to dismiss; indeed, there is overwhelming case law to the contrary." *DeNune v. Consol. Capital of N. Am., Inc.*,

288 F. Supp. 2d 844, 852 (N.D. Ohio 2003); *see also Rushford v. Firstar Bank, N.A.*, 50 F. App'x 202, 203 (6th Cir. 2002) (affirming "the district court's dismissal pursuant to Rule 12(b)(6) based on the doctrine of *res judicata*"); *City of Canton v. Maynard*, 766 F.2d 236, 239 (6th Cir. 1985) (affirming district court's Rule 12(b)(6) dismissal on *res judicata* grounds). Thus, the Ocwen Parties have appropriately raised a *res judicata* defense in their motion to dismiss. The Court will move on to assess whether each element of claim preclusion has been satisfied.

First, the foreclosure judgment was a prior final, valid decision on the merits by a court of competent jurisdiction. In Ohio, "[a] default judgment acts as a valid and final judgment on the merits." *Harris-Gordon v. Mortg. Elec. Registration Sys.*, No. 3:09CV02700, 2010 WL 3910167, at *3 (N.D. Ohio Oct. 4, 2010); *see also Clark v. Lender Processing Services, Inc.*, 949 F. Supp. 2d 763, 773-74 (N.D. Ohio 2013) (holding a final decision on the merits occurred where "[t]he Tenth District Court of Appeals of Ohio affirmed the trial court's decision denying Whiteman's Rule 60(b) motion to vacate the default judgment and to dismiss the foreclosure complaint against him"). Here, the Ohio court of appeals affirmed the foreclosure court's default judgment and denial of Plaintiffs' motion to vacate the foreclosure decree. Therefore, the underlying foreclosure action against Plaintiffs resulted in a final judgment on the merits.[2]

Second, this action involves the same parties, or their privies, as the underlying foreclosure proceedings. "A party is in 'privity' with another if it succeeds to an estate or an interest formerly held by the other, or where a party is so identified in interest with another that the party represents the same legal right." *Jarvis v. Wells Fargo Bank*, No. 09 CO 6, 2010 WL 2749602, at *7 (Ohio Ct.

---

[2] It is true, as Plaintiffs argue, that a default judgment may prevent the application of issue preclusion because their claims were not "actually and necessarily litigated" in the prior case. But that is not relevant to the determination of whether Plaintiffs' claims are barred by claim preclusion.

15

App. 7th Dist. June 30, 2010).  Indeed, "'[a] mutuality of interest, including an identity of desired result,' may also create privity between parties."  *Id.* (quoting *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000)).  Generally, a mutuality of interest in effectuating a foreclosure is sufficient.  *See, e.g.*, *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 276 (6th Cir. 2016) ("Here, LSR, Hill, Bank of America, MERS, Kist, and Harrington all shared the same interest in effectuating Bank of America's foreclosure of the mortgage and therefore were all in privity."); *Kline v. Mortg. Elec. Sec. Sys.*, No. 3:08cv408, 2011 WL 1134604, at *7-8 (S.D. Ohio Feb. 17, 2011), *report and recommendation adopted*, 2011 WL 1125303 (S.D. Ohio Mar. 24, 2011) (holding servicer of loan was in privity with the entity that brought the prior foreclosure action based on a mutuality of interest).

MERS was a party in the underlying foreclosure action against Plaintiffs.  Homeward and Ocwen were not parties to that suit, but they are in privity with DBNTC, which brought the underlying foreclosure action against Plaintiffs.  Plaintiffs have alleged that Mr. Hughes entered into a loan modification agreement that identified American Home Mortgage as the lender and that "American Home Mortgage changed its name to Homeward Residential, Inc. and sold to Defendant Ocwen." (Doc. No. 1-1 at ¶¶ 24, 27.)  The modification agreement identifies American Home Mortgage as the "Lender or Servicer," and uses the term "Lender" to refer to it throughout the agreement.  (*Id.* at Ex. C.)  Although neither party has described the precise role that American Home Mortgage played, it is clearly connected to the Note and Mortgage in some way, likely as the lender or servicer for the loan.  As such, it shared the same interest in the foreclosure action against Plaintiffs as DBNTC.  *See Jarvis*, 2010 WL 2749602, at *8 (finding privity existed even though plaintiffs' complaint did "not explain why American Home Mortgage is named as a defendant, other than to say that all three defendants are connected to their home mortgage"); *see also Harris v. Ocwen Loan Servicing, LLC*,

No. 17–5399, 2017 WL 8791308, at *3 (6th Cir. Nov. 22, 2017) ("Each of the defendants is a party with different obligations with respect to the Harrises' mortgage—Ocwen is the current loan servicer, BONYM is trustee of the Deed of Trust securing the property, GMAC was the prior loan servicer, and Decision One is the lender—but all share a common interest: the lawfulness of the ongoing foreclosure proceedings."). Consequently, Homeward, formerly known as American Home Mortgage, and Ocwen, which purchased Homeward, are in privity with DBNTC.

There is even less information in the record, however, regarding Mr. Berkeley's relationship with the other Defendants. Plaintiffs have alleged he was a notary public, "an employee, agent, contractor, representative, officer, and/or otherwise associated with the other named Defendants," and that he was a "robo-signer" of the "loan, mortgage, and subsequent purported instruments." (Doc. No. 1-1 at ¶¶ 11, 46.) Specifically, it appears that Mr. Berkeley notarized the corrective assignment of mortgage. (*Id.* at Ex. E.) The Ocwen Parties contend that all of the Ocwen Parties, presumably including Mr. Berkeley, "are authorized agents of DBNTC," but do not cite to anything in support of their assertion. (Doc. No. 7 at 14.) There is support for the proposition that agents and employees of the entities involved in a foreclosure action are in privity with them, as the Sixth Circuit has held that claims against an employee of the foreclosing bank were barred by claim preclusion. *Smith*, 658 F. App'x at 276. However, the Court is hesitant to hold that privity exists when the relationship between Mr. Berkeley and the other parties is so unclear. Accordingly, the Court finds that Mr. Berkeley has not established that he is in privity with DBNTC, and Plaintiffs' claims against him are not barred by *res judicata*.

With regard to the third element of claim preclusion, all of Plaintiffs' claims were or could have been litigated in the foreclosure proceedings. "The scope of claims covered by this prong is

quite broad" and prevents "not only relitigation of a claim previously adjudicated; it also precludes litigation of a claim or defense that should have been raised, but was not, in the prior suit." *Dale*, 2016 WL 1170772, at *7 (quoting *Frazier v. Matrix Acquisitions, LLC*, 873 F. Supp. 2d 897, 902 (N.D. Ohio 2012)). Under Ohio law, "the question is not what claims Plaintiffs opted to include . . . but what claims they could have included." *Trafalgar Corp. v. Miami Cty. Bd. of Cty. Com'rs*, No. 3:05-CV-084, 2006 WL 689112, at *8 (S.D. Ohio Mar. 14, 2006). Plaintiffs have not presented any valid reason as to why they could not have brought each of their claims in the foreclosure action. Indeed, courts have found that causes of action identical to many of Plaintiffs' claims could have been brought in prior foreclosure proceedings. *See, e.g.*, *Hines v. Franklin Sav. and Loan*, No. 1:09–cv–914, 2011 WL 882976, at *1, *5 (S.D. Ohio Jan. 31, 2011), *report and recommendation adopted*, 2011 WL 886128 (S.D. Ohio Mar. 10, 2011) (concluding that plaintiff's TILA, RESPA, and FDCPA claims "could and should have been presented in the state court foreclosure action").

Finally, almost all of Plaintiffs' claims arise from the same transaction or occurrence as the subject matter of the previous action. "The Ohio Supreme Court has defined 'transaction' as a 'common nucleus of operative facts.'" *Hapgood*, 127 F.3d at 494. Here, the vast majority of Plaintiffs' claims arise out of the same Note and Mortgage that were enforced against Plaintiffs in the foreclosure action. For instance, Plaintiffs' claims for breach of contract, bad faith, breach of the implied covenant of good faith and fair dealing, and promissory estoppel all assert that Defendants breached the terms of the Note and Mortgage or their implied duties or promises regarding those documents. Similarly, Plaintiffs' civil conspiracy and fraud claims, which also form the basis for their RICO and OCPA claims, center around the Defendants' fraudulent inducement of Plaintiffs to execute the Note and Mortgage and subsequent fraudulent assignments and transfers of those

documents. *See, e.g.*, *King v. Bank of America NA*, No. 3:18 CV 2248, 2019 WL 3292184, at *8 (N.D. Ohio June 19, 2019), *report and recommendation adopted*, 2019 WL 3290333 (N.D. Ohio July 22, 2019) (barring plaintiffs' fraud/misrepresentation, civil conspiracy, OCPA, and RICO claims, which were "all based on Plaintiffs' allegations regarding improper indorsement or assignment of the Note/Mortgage and the foreclosure proceedings that followed").

Plaintiffs' allegations of violations of TILA, RESPA, and NHA and slander of title fare no better, as they all relate to the Note, Mortgage, and foreclosure litigation as well. *See Gaston v. Wells Fargo Bank, N.A.*, No. 3:13 CV 2099, 2013 WL 6068085, at *2-3 (N.D. Ohio Nov. 18, 2013) (holding *res judicata* barred plaintiff's claims that defendant "failed to timely provide required disclosures and engaged in unfair trade practices in violation of TILA" and "violated RESPA by charging fees without required disclosures"); *Hines*, 2011 WL 882976, at *1, *5 (holding *res judicata* barred plaintiff's TILA and RESPA claims).[3]

However, Plaintiffs have cited persuasive authority that their claims based on the FDCPA and CSPA do not arise from the same transaction or occurrence as the subject matter of the foreclosure proceedings. In *Foster v. D.B.S. Collection Agency*, the court held that the plaintiffs' FDCPA and CSPA claims did not arise out of a common nucleus of operative facts as the underlying debt collection cases. 463 F. Supp. 2d 783, 797 (S.D. Ohio 2006). The court reasoned that the debt collection cases addressed the plaintiffs' "alleged liability to repay certain debts," while the plaintiffs' claims in federal court "address[ed] the allegedly unlawful misrepresentations Defendants made during the process of collecting such debts." *Id.*; *see also Todd v. Weltman Weinberg & Reis Co.*,

---

[3] Alternatively, to the extent Plaintiffs seek to bring a claim under the NHA, "such a claim must also be dismissed because there is no private right of action under the Act." *King*, 2019 WL 3292184, at *14.

*LPA*, No. 1:03cv171, 2008 WL 419943, at *6 (S.D. Ohio Feb. 14, 2008) ("Plaintiffs' FDCPA claims arise out of a different set of operative facts than did the underlying state court cases."). Similarly, Plaintiffs' claims that the Ocwen Parties made unlawful misrepresentations in violation of the FDCPA and CSPA do not arise out of a common nucleus of operative facts as the foreclosure action, which sought to establish Plaintiffs' liability under the Note and Mortgage. As a result, those claims are not barred by *res judicata*.

In summary, all of Plaintiffs' remaining claims, except for those based on the FDCPA and CSPA, are barred by claim preclusion with regard to Homeward, MERS, and Ocwen. Claim preclusion does not, however, bar Plaintiffs' remaining claims against Mr. Berkeley because the Ocwen Parties have failed to establish that he is in privity with any of the parties to the prior foreclosure action.

### iii. Statute of Limitations

In addition to their arguments based on the *Rooker–Feldman* doctrine and *res judicata*, the Ocwen Parties contend that Plaintiffs' claims are barred by the applicable statutes of limitations. The Court finds that Plaintiffs' FDCPA and CSPA claims—which are the only remaining claims against Homeward, MERS, and Ocwen—are untimely and are barred by the applicable statutes of limitations.

Generally, a motion to dismiss under Rule 12(b)(6) is "an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, dismissal is appropriate when "the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *Campbell v. Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). But, "[i]f the defendant meets this

requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Id.*

"Civil actions under the Fair Debt Collection Practices Act may be brought 'within one year from the date on which the violation occurs.'" *Smith*, 658 F. App'x at 273 (quoting 15 U.S.C. § 1692k(d)). In addition, "when a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the FDCPA claim—insofar as it is viable—accrues on that date." *Id.* (quoting *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 258 (6th Cir. 2014)). Thus, an FDCPA claim based on an improper foreclosure action accrues when the action is initiated. *Id.* ("The FDCPA claim accrued when Bank of America initiated the foreclosure action on a mortgage that Smith claims it did not actually own."); *King*, 2019 WL 3292184, at *11 ("Defendants thus assert Plaintiffs' one year period began on November 14, 2011 (when BANA filed the complaint for foreclosure) and expired one year later on November 14, 2012. The undersigned agrees."). Moreover, a defendant does "not violate the FDCPA anew merely by asserting its interest in the mortgage throughout the state-court action." *Smith*, 658 F. App'x at 273.

In this case, Plaintiffs allege that "Defendants misrepresented the character and legal status of the debt (to wit: note and/or mortgage) in violation of 15 USC 1692(e)(2), by filing the false, incorrect, improper, unwarranted, and/or misleading foreclosure litigation and ultimate Sheriff Sale and purchase of the subject Property." (Dkt. 1-1 at ¶ 114.) They also appear to allege several violations that occurred prior to the foreclosure action, although these allegations are generally conclusory. Regardless, Plaintiffs' FDCPA claim accrued, at the latest, on June 13, 2014 when DBNTC filed the foreclosure action against Plaintiffs in state court. Plaintiffs did not file this action until November 30, 2018, well after the one-year statute of limitations had expired.

Plaintiffs do not appear to dispute that their claims were filed after the statute of limitations had passed, but argue that the statute of limitations should be equitably tolled. Plaintiffs' brief provides almost no detail in support of their argument, but the Court assumes their tolling argument is based on the doctrine of fraudulent concealment. "In order to establish equitable tolling by fraudulent concealment, plaintiffs must allege and establish that: 1) defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitation period; and 3) until discovery of the cause of action, plaintiffs exercised due diligence in trying to find out about the cause of action." *Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 927 (N.D. Ohio 2009).

The Sixth Circuit does not appear to have explicitly ruled on "whether equitable tolling based on fraudulent concealment applies under the FDCPA." *Smith*, 658 F. App'x at 274. However, even assuming that it does apply, Plaintiffs have failed to allege facts sufficient to establish fraudulent concealment. Plaintiffs make only a conclusory allegation of concealment, but fail to point to any specific acts taken by the Ocwen Parties to affirmatively conceal any of their illegal acts. Indeed, the allegedly false assignments were filed as exhibits in the state court foreclosure action against Plaintiffs. *See id.* ("The allegedly fraudulent assignment was publicly available to all because it was both filed in state court and registered with the county."). Plaintiffs' allegations also fail to demonstrate that they were prevented from discovering the violations despite the exercise of due diligence. Accordingly, equitable tolling is not appropriate in this case, and Plaintiffs' FDCPA claims are barred by the statute of limitations.

Plaintiffs' claims under the CSPA are also time-barred. "Under the CSPA, consumers may not bring claims 'more than two years after the occurrence of the violation which is the subject of the

suit.'" *Bucy v. Aurora Loan Services, LLC*, No. 2:10–cv–1050, 2011 WL 1044045, at *2 (S.D. Ohio Mar. 18, 2011) (quoting O.R.C. § 1345.10(C)). Moreover, "[t]here is no discovery rule applicable to the statute; the two-year statute of limitations is absolute." *Id.* Although somewhat unclear from the complaint, Plaintiffs appear to base their CSPA claims on the same conduct that served as the basis for their FDCPA claims. As such, their claims arose when DBNTC filed its foreclosure action against them on June 13, 2014. *See King*, 2019 WL 3292184, at *12 ("Again, because Plaintiffs' OCSPA claim arises out of the origination of the loan and the foreclosure action . . . it accrued (at the latest) on November 14, 2011, when BANA filed for foreclosure, and expired two years later."). Even with a two-year statute of limitations, Plaintiffs' current complaint—filed on November 30, 2018—is years too late.[4]

Thus, Plaintiffs' FDCPA and CSPA claims against the Ocwen Parties are barred by the applicable statutes of limitations.

### iv. Failure to State a Claim

The Court has determined that all of Plaintiffs' claims against MERS, Homeward, and Ocwen are barred by either the *Rooker–Feldman* doctrine, *res judicata*, or the applicable statutes of limitations. However, with regard to Mr. Berkeley, only Plaintiffs' quiet-title, FDCPA, and CSPA claims have been resolved. Thus, the Court must still determine whether Plaintiffs have adequately alleged any of their remaining claims against Mr. Berkeley. The Court finds that they have not.

Plaintiffs have alleged very few facts specific to Mr. Berkeley in their complaint. Plaintiffs make the following allegations regarding Mr. Berkeley:

---

[4] Although neither party addresses it, Plaintiffs' claim would also be barred by the alternative statute of limitations applicable to the rescission of residential mortgage transactions, which is three years after the transaction. *See* O.R.C. § 1345.09(C)(2); 15 U.S.C. § 1635(f).

1. Upon information and belief, Defendant Jason R. Berkeley was and remains a resident of the State of Florida; an official certified/licensed Notary Public under and bound by the laws and professional responsibilities and regulations of the State of Florida; and was, at all relevant times, an employee, agent, contractor, representative, officer, and/or otherwise associated with the other named Defendants. (Doc. No. 1-1 at ¶ 11.)

2. Defendant Boulton, Defendant Frazier, Defendant Pires, Defendant Berkeley were "robo-signer" of loan, mortgage, and subsequent purported instruments. (*Id.* at ¶ 46.)

3. The signatures of Defendant Boulton, Defendant Frazier, Defendant Pires, and Defendant Berkeley may have been forged to expedite the assembly-line process outlined above even faster and/or for other improper, fraudulent, and/or otherwise unenforceable purposes. (*Id.* at ¶ 47.)

In a case with almost identical allegations against a defendant for his role regarding the plaintiffs' note and mortgage, the court found that the plaintiffs had failed to state a valid claim against him. *See Hall*, 2017 WL 1462240, at *7 ("Even if Defendant Paktan could be considered a 'robosigner' as plaintiffs speculate, plaintiffs have not alleged any viable cause of action for such conduct.").

Likewise, the Court finds that Plaintiffs have not alleged any viable causes of action against Mr. Berkeley. Plaintiffs have not alleged that Mr. Berkeley was a party to the Note or Mortgage or that he made any promises relied upon by Plaintiffs. Nor have Plaintiffs demonstrated how he could be held liable under any of the federal or state statutes delineated in Count 4. Plaintiffs' allegations in support of the rest of their claims are equally inadequate, containing vague and conclusory allegations at best. This is especially true with respect to their fraud claims, which require additional particularity. *See* Fed. R. Civ. P. 9(b). Accordingly, pursuant to Rule 12(b)(6), the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted against Mr. Berkeley.[5]

---

[5] Because Plaintiffs' claims against all moving parties have now been resolved, the Court need not address the Ocwen Parties' additional arguments regarding the statutes of limitations applicable to other counts or Plaintiffs' failure to state a claim against the other Ocwen Parties.

## IV.    Conclusion

For the reasons set forth above, DBNTC's motion to dismiss for insufficient service of process (Doc. No. 8) is GRANTED, and Plaintiffs' claims against DBNTC are DISMISSED WITHOUT PREJUDICE.  DBNTC's motion to dismiss based on its joinder in the Ocwen Parties' motion to dismiss is DENIED AS MOOT.

The Ocwen Parties' motion to dismiss (Doc. No. 7) is GRANTED, except Plaintiffs' quiet-title claim (Count 9) is REMANDED to state court.  Counts 1-8 and 10 against Homeward, MERS, and Ocwen are either barred by the doctrine of *res judicata* or time-barred by the statute of limitations and are therefore DISMISSED WITH PREJUDICE.  Plaintiffs' FDCPA and CSPA claims against Mr. Berkeley are likewise time-barred and are DISMISSED WITH PREJUDICE, while Plaintiffs' remaining claims against Mr. Berkeley are DISMISSED WITHOUT PREJUDICE based on Plaintiffs' failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED.**


　　　　　　　　　　　　　　　　　　　　 *s/Pamela A. Barker*　　　　　　　
　　　　　　　　　　　　　　　　　　　　PAMELA A. BARKER
Date:  October 7, 2019　　　　　　　　　U. S. DISTRICT JUDGE